UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER MARK BUSH, et al.,<br><br>                               Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                               Defendants. | Case No.:  3:15-cv-00686-L-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Pending before this Court are the parties' cross-motions for summary judgment. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the parties cross-motions for summary judgment.

//
//
//
//
//
//
//
//

## I. BACKGROUND

This case arises out of a routine canine nuisance call. Plaintiffs are Roger Bush, Jason Bush, and Pietra McCotter. They lived on a fenced in residential property located in a rural portion of San Marcos. Plaintiffs kept several pet dogs on the property, some of which were pit bulls. On May 26, 2014, Plaintiffs' neighbor Ms. Bovee complained that Plaintiffs' dogs were loose. Defendants Deputy Perez ("Perez") and Deputy Price ("Price"), of the San Diego Sherriff's Department, responded to the call. Upon arrival, Ms. Bovee informed the deputies that Plaintiffs' dogs were getting out and coming to her fence line, trying to penetrate through. Ms. Bovee further stated she was afraid Plaintiffs' dogs might cause harm to her animals or her family.

After talking with Ms. Bovee, the deputies walked over to Plaintiffs' property to discuss the canine situation. Plaintiffs' property is located behind a chain link perimeter fence. The front gate area of this fence, located on the western portion of the property, is barbed at the top and features prominently displayed signs declaring "NO TRESPASSING" and "_BEWARE_ OF DOG." ([Doc. 27-8].) The deputies shook the perimeter fence and yelled "Sheriff's Department." After getting no response, the deputies opened the closed but unlocked front gate and walked up a long driveway that runs east / west and, at its eastmost portion, terminates into a patio area appurtenant to the home. Deputy Perez knocked on the front window and yelled "Sheriff's Department." At this time, Deputy Price was standing somewhere close to the intersection of the driveway and patio area. Roger Bush was inside the home. After hearing Deputy Perez, Roger Bush opened a sliding glass door located on the southern side of the home.

Three of his dogs then ran past Roger Bush, through the open glass door. One of them was a pit bull named Odin. Deputy Perez claims Odin was running toward him in a manner such that he feared imminent attack. Roger Bush's testimony disputes that Odin was running at Perez, asserting instead that Odin was running in a northerly direction such that Odin's left side was facing Deputy Perez. Deputy Perez shot Odin two times. Both bullets landed on the left side of Odin's body. After shooting Odin, Roger Bush

claims that Perez aimed his weapon at him.  Perez disputes this contention.  Odin died shortly after Perez shot him.

On March 27, 2015, Plaintiffs filed a Complaint alleging (1) unreasonable search, (2) unreasonable seizure, (3) trespass, (4) conversion, and (5) violation of Cal. Civ. Code § 52.1 (the Bane Act).  (See Complaint [Doc. 1].)  Plaintiffs' Complaint also includes a prayer for punitive damages against Deputy Perez.  The parties have filed cross motions for summary judgment on all causes of action, and Defendants have moved for summary judgment as to the punitive damages claim.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322–23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.

2001).  Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995).  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits."  *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotes and citations omitted).  Thus, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  *Id.* (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)).  If, however, the cross-motions are before the court at the same time, the court is obliged to consider the evidence proffered by both sets of motions before ruling on either one.  *Id.* at 1134.

//

### III. ENTRY UPON PROPERTY

Each party seeks summary adjudication in their favor on the issue of whether Perez and Price violated Plaintiffs' Fourth Amendment Right to be free from unreasonable searches by entering upon the property.  Entry upon the curtilage of a home by law enforcement constitutes a search.  *See United States v. Jacobsen,* 466 U.S. 109, 113 (search occurs when the government intrudes upon a reasonable expectation of privacy); *United States v. Dunn*, 480 U.S. 294, 300 (1987) (a person has a reasonable expectation of privacy in the curtilage of their home).  A warrantless search is reasonable only if it falls within one of a few well established and carefully delineated exceptions to the warrant requirement.  *See Katz v. United States*, 389 U.S. 347, 357 (1967).  The undisputed facts show that the deputies passed through plaintiffs' gate and walked up to the home.  Thus, the dispositive questions presented by the first cause of action are (1) whether the area the officers occupied constituted curtilage and (2) if so, whether an exception to the warrant requirement justified the intrusion.[1]

#### A. Curtilage

There is no dispute that the officers opened the exterior gate to the property and walked up to the home itself.  In doing so, Plaintiffs argue the deputies entered upon the curtilage of the home.  Defendants argue this area was not curtilage or, at the very least, there is a genuine dispute of material fact on the issue.  The curtilage of the home is "the area to which extends the intimate activity associated with the sanctity of a [person's] home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180 (1984) (internal citations and quotation marks omitted).  Unlike "open fields," the curtilage of

---

[1] Defendants also seem to argue that even if they intruded upon the curtilage of the home and even if no exception to the warrant requirement applies, no search, and therefore no Fourth Amendment violation, occurred because the deputies just wanted to have a consensual conversation.  (See Doc. 24 at 5–7; Doc. 33 at 5.)  Defendants fail to support this argument with citation to any on-point, binding authority.  Further, this argument is a bit far-fetched.  It would seem to permit an officer to walk into a couple's bedroom and say "hello" so long as he simply wanted to "initiate consensual contact" rather than arrest a resident or gather evidence.

the home receives Fourth Amendment protection. *Id.* The area immediately surrounding and associated with the home is *per se* curtilage. *Florida v. Jardines*, 133 S. Ct. 1409, 1414–15 (2013). This includes the area "just outside the front window." *Id.* at 1414. Beyond this, the inquiry into whether an area is curtilage involves consideration of four non-exhaustive factors: (1) proximity to the home; (2) whether an enclosure surrounding the home includes the area; (3) the nature of the homeowner's use of the area; and (4) steps taken to protect the area from the observation of passersby. *United States v. Dunn*, 480 U.S. 294, 301 (1987).

It is undisputed that Deputy Perez walked up to and knocked on the front window of the home. (Perez Dep. [Doc. 24-3] 34–36.) Because the front window is *per se* curtilage under *Jardines*, this alone compels the finding that Perez occupied the curtilage. Deputy Price, it seems, did not walk up to and knock on the front window. Price did, however, walk through the front gate and up the long driveway to a spot located just a few yards away from the front porch area. (Price Dep. [Docs. 24-3, 27-5] 36:15–37:1; Bush Dep. Ex. I [Doc. 27-13].) The question therefore is whether this location constitutes curtilage under *Dunn*.

The first two *Dunn* factors strongly favor a finding of curtilage as this spot is located both very close to the home and within the home's perimeter fence. So too does the third factor. Plaintiff Roger Bush stored a boat, a trailer, and all of his work equipment in this general area. *See United States v. Perea-Rey*, 680 F.3d 1179, 1185 (9th Cir. 2012) (storing valuable belongings in an area supports a finding of curtilage). Further, just yards away from where Price stood is a patio with tables, chairs, and pillow beds for the dogs. Roger Bush's undisputed declaration testimony establishes that the family used this area to eat and spend time together.

The last *Dunn* factor looks at precautions taken to prevent passersby from observing the area. Looking at Defendants' Exhibit A [Doc. 24-3] it appears that a passerby could potentially walk up to the front gate, peer through the chain links, and observe activity taking place at the area Price occupied. However, merely being able to

see a portion of a property from an off-site vantage point does not preclude the area from being protected curtilage. *Perea-Rey*, 680 F.3d at 1186 ("[t]he ability to observe part of the curtilage or the interior of a home does not authorize law enforcement, without a warrant, to then enter those areas to conduct searches or seizures.")  Further, the distance separating the front gate and Price's location is significant at almost one acre.  (See JSUF [Doc. 34].)  Finally, in rural areas such as where Plaintiffs' home sits, it stands to reason that there are less passersby and therefore less of a need to erect visual barriers to prevent them from observing the curtilage.  *See United States v. Johnson*, 256 F.3d 895, 903 (choosing a property in a rural area, in and of itself, supports a finding that the occupant took steps to prevent passersby from observing the area).  Accordingly, the Court finds that, under *Dunn*, Price occupied the curtilage.

### B.  Knock and Talk

Defendants contend that, even if they entered upon the curtilage, their entry was justified under the knock and talk exception to the warrant requirement.  The knock and talk exception stems from the legally recognized concept that a search conducted pursuant to consent is reasonable.  *See United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016).  It is common practice for visitors seeking to initiate consensual contact to walk up to the front door of a home, stand on a "welcome" mat, and ring a doorbell or use a knocker to rouse an occupant.  *Jardines,* 133 S. Ct. at 1415–16.  Thus, features of a property can give rise to an "implied license" to allow a visitor (whether law enforcement or not) to enter the curtilage.  Any search conducted within the bounds of this implied license is therefore reasonable.  *Id.*

Here, the undisputed facts clearly show the features of Plaintiffs' home did not give rise to an implied license to pass through the gate onto the property.  Indeed, the property is encircled by a barbed chain link fence.  Prominently featured by the closed front gate were two ominous signs reading "NO TRESPASSING" and <u>BEWARE</u> OF DOG."  (See Ex. D [Doc. 27-8].)  No reasonable person could have stood at the front

7

3:15-cv-00686-L-JMA

gate, in plain view of such signage, and concluded they had an implied invitation to enter. The "NO TRESPASSING" sign alone explicitly communicates that no such invitation exists. The knock and talk exception therefore cannot justify the deputies' entry upon the property.

### C. Qualified Immunity

As described above, Deputies Price and Perez conducted an unreasonable search by entering upon the curtilage without a warrant. However, under the doctrine of qualified immunity, they can only be liable for this violation of Plaintiffs' Fourth Amendment rights if these rights were clearly established at time of violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). For a right to be clearly established, it is not necessary that a factually identical action has been held unlawful. It is sufficient if the state of the law at the time of the complained of conduct gave the officers fair notice that their actions were unlawful. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In 1987, the Supreme Court established the four factors analyzed above for determining whether an area is curtilage. *Dunn*, 480 U.S. at 1139–40. In 2013, the *Jardines* decision established the area outside a front window is curtilage. *Jardines*, 133 S. Ct. at 1414–15. Thus, by 2013, the state of the law provided fair notice that curtilage includes the area outside of a front window as well as any area (1) located mere yards away from the home; (2) enclosed within a perimeter fence; (3) used to host intimate family activities and store valuable equipment; and (4) located in a rural portion of the county were passersby are less likely to observe the property. Because the actions at issue here occurred on May 26, 2014, it follows that the officers are not entitled to qualified immunity on the issue of curtilage.

The same is true of the knock and talk exception. Roughly 50 years before the events at issue here the Ninth Circuit articulated that "express orders from the person in possession against any possible trespass" will defeat the knock and talk exception. *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964). As explained above, the front gate area

1  features a very visible sign displaying prominent letters stating "NO TRESPASSING."
2  Accordingly, the deputies are not entitled to qualified immunity.  The Court therefore
3  **GRANTS** Plaintiffs' Cross Motion and **DENIES** Defendants' Cross Motion as to the
4  first cause of action.  Because the parties correctly agree (see Doc. 27 25:1–15; Doc. 33
5  13:7–15) that the third cause of action is derivative of the first cause of action the Court
6  also **GRANTS** Plaintiffs' Cross Motion and **DENIES** Defendants' Cross Motion as to
7  the third cause of action.

## IV.  SHOOTING OF DOG

Each party also seeks summary adjudication in their favor on the issue of whether Deputy Perez' shooting of Odin constituted an unreasonable seizure.  There is no question that Perez seized Odin by shooting him.  *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) (killing a dog constitutes a seizure of property).  Rather, the question is whether the seizure was reasonable.  The determination of whether a seizure is reasonable requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations and quotation marks omitted).

Defendants argue Perez acted reasonably in shooting Odin because Odin was charging straight at him and any reasonable officer would have used lethal force to defend themselves in such a situation.  This argument is unpersuasive for two reasons.  First, that Odin was charging straight at Perez is not an undisputed fact.  Plaintiff Roger Bush has submitted declaration testimony that Odin was actually running northbound, parallel to the property rather than westbound toward Perez.  (Bush Declaration [Doc. 27-3] ¶ 16.)  This testimony would also seem consistent with the location of the bullet holes on the left side of Odin's body.

Second, even assuming for sake of argument that Odin was charging directly at Perez such that a reasonable officer would find the use of deadly force necessary, *Hells*

*Angels* compels this Court to grant summary adjudication in favor of Plaintiffs. In *Hells Angels*, law enforcement officers executed search warrants at two different properties. Prior to search warrant execution, the officers received information that the properties featured large and potentially aggressive dogs. *Hells Angels*, 402 F.3d at 968–69. Despite this knowledge, the officers failed to consider any non-lethal methods to subdue the dogs. The Officers then shot and killed the dogs when they entered the properties and it became clear that the dogs posed a threat to officer safety. *Id.*

In finding the seizures unreasonable, the Ninth Circuit balanced the intrusion of the seizures against the countervailing governmental interests at stake. In doing so, the court found that killing a dog constituted a severe intrusion. *Hells Angels*, 402 F.3d at 975. The court then reasoned that such an intrusion is not warranted when officers, in a non-emergency situation, have advance knowledge that a property features potentially dangerous dogs yet fail to consider any non-lethal methods of incapacitation. *Id.* at 978 ("A reasonable officer should have known that to create a plan to enter the perimeter of a person's property, knowing all the while about the presence of dogs on the property without considering a method for subduing the dogs besides killing them, would violate the Fourth Amendment.").

The undisputed facts of the present case fit squarely under the test articulated in *Hells Angels*. The deputies had clear notice that the property featured potentially dangerous canines. Indeed, they (1) received a complaint about three pit bulls that were aggressively barking and lunging at a neighbor's fence; (2) listened to the neighbor describe that she felt the dogs were a threat to the safety of her animals and her family; and (3) confronted a sign on Plaintiffs' gated property featuring the ominous language "<u>BEWARE</u> OF DOG." Despite this clear notice and the absence of any exigent circumstances requiring immediate entry into the gated yard, both deputies admit in deposition testimony that they never considered any non-lethal method by which to subdue the animals.

Defendants attempt to distinguish from *Hells Angels* by pointing out that the deputies in this case did not have an entire week's worth of time to consider a non-lethal method to engage the dogs. However, in *Hell's Angels*, the Ninth Circuit did not hold that advance notice of at least a week is required to trigger the obligation to consider non-lethal methods of engagement. Rather, the court held one week more than sufficient because, given this amount of advance notice, the officers were not confronted with a sudden unexpected situation presenting exigent circumstances. *See Hells Angels*, 402 F.3d at 978. Here too the deputies did not suddenly confront an unexpected emergency situation that precluded consideration of non-lethal engagement methods. The deputies' deposition testimony establishes that this was a low key routine call and that, at time of entry upon Plaintiffs' property, there was no reason to believe Plaintiffs' dogs presented an immediate danger to anyone. (Price Dep. 25:18–26:12; Perez Dep. 25:15–21.) There is no reason the deputies could not have paused for a minute to consider non-lethal methods of engaging the canines in the seemingly likely event that self-defense became necessary. Accordingly, the Court finds the shooting of Odin constituted an unreasonable seizure under *Hell's Angels*.

Nor is Perez entitled to qualified immunity under the second prong of *Katz* for this unreasonable seizure. As explained above, the facts of this case squarely trigger the test articulated by the Ninth Circuit in *Hell's Angels* for determining when it is unreasonable for law enforcement acting within the scope of their employment to shoot a dog contained within a plaintiff's property. The Ninth Circuit decided *Hell's Angels* in 2005. Thus, the law governing this dispute was clearly established over nine years before Perez shot Odin. Accordingly, the Court **GRANTS** Plaintiffs' Cross-Motion and **DENIES** Defendants' Cross-Motion as to the second cause of action. Because the parties correctly agree (see Doc. 27 25:1–15; Doc. 33 13:7–15) that the fourth cause of action is derivative of the second cause of action, the Court also **GRANTS** Plaintiffs' Cross-Motion and **DENIES** Defendants' Cross-Motion as to the fourth cause of action.

//

## V. BANE ACT

The Bane Act makes it unlawful to employ or attempt to employ threats, intimidation, or coercion in an effort to interfere with a person(s)' free exercise of their rights under federal or California law. Cal. Civ. Code § 52.1(a). Plaintiff's claim two independent violations of the Bane Act.

First, Plaintiffs contend Bane Act liability is proper because Perez used violence to violate Plaintiffs' right to not have their dog unreasonably seized. That Perez used *violence upon Odin* (by shooting his gun) to effect the seizure is indisputable. But, it does not follow that Perez used *threats, intimidation, or coercion upon Plaintiffs* to effect the seizure. Indeed, Roger Bush's deposition testimony actually suggests Perez did not interact with Plaintiffs at all until after discharging his weapon. Similarly, the undisputed facts show that neither officer directed threats, intimidation, or coercion to trespass upon the curtilage. They simply opened the gate and walked through.[2] Because the evidence thus does not show the use of any threats, intimidation, or coercion in connection with the encroachment on the curtilage or the shooting of Odin, the Court **GRANTS** Defendants' Cross Motion and **DENIES** Plaintiffs' Cross Motion as to the fifth cause of action to the extent it is based upon these two constitutional violations.

Plaintiffs argue that Perez' action of pointing his gun at Roger Bush after shooting Odin constitutes an additional and independent basis upon which to find Bane Act liability. However, because the issue of whether Perez did in fact point his weapon at Bush is disputed, Plaintiffs concede that only the jury could find Defendants liable under this theory. Defendants contend that summary judgment in their favor is proper because, even if Perez pointed his weapon at Bush (which would clearly constitute intimidation),

---

[2] Plaintiffs also seem to argue that Perez violated the Bane Act because he shot Odin as a means of threatening, coercing, or intimidating Plaintiffs into allowing the unreasonable search of the curtilage. This argument is unpersuasive. The unreasonable search was accomplished by simply walking through the gate, and Plaintiffs' have not cited to any evidence suggesting the shooting of Odin was used as a means to threaten, coerce, or intimidate.

Plaintiffs have not provided any evidence suggesting this action interfered with or was an attempt to interfere with any of Plaintiffs' legal rights.

The Court disagrees. A seizure occurs when a person submits to a law enforcement officer's assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). A police officer pointing a gun at someone is unquestionably an assertion of authority. Further, nothing in the record suggests that Bush resisted this assertion of authority. The Court therefore **DENIES** Defendants' Cross Motion on this issue as to Plaintiff Roger Bush only. However, because there is no evidence suggesting Perez violated the constitutional rights of the other plaintiffs by pointing his gun at Roger Bush, the Court **GRANTS** Defendants' Cross Motion on this issue as to Plaintiffs Jason Russel Bush and Pietra Marie McCotter only.

## VI.  PUNITIVE DAMAGES

Plaintiffs' Complaint prays for punitive damages against Deputy Perez. Punitive damages are generally improper unless the defendant acted with malice. *See Smith v. Wade*, 461 U.S. 30, 56 (1983); Cal. Civ. Code § 3294. Defendants contend Perez did not act with malice because he shot Odin for purposes of self-defense.

It may very well be true that Perez did not act maliciously. That said, Bush has submitted sworn testimony to the effect that Odin was never running at Perez. Bush claims that, at the time of shooting, Odin was facing north and perpendicular to Perez, who appears to have been facing an easterly direction. The location of the bullet holes in the left side of Odin's body is consistent with this testimony. A reasonable jury might conclude from this evidence that Odin was running away from Perez and that Perez shot Odin not out of self-defense but with malicious intent. For this reason, the Court **DENIES** Defendants' Cross Motion as to the issue of punitive damages.

//
//
//

## VII. CONCLUSION AND ORDER

For the foregoing reasons, the Court orders as follows:

- Plaintiffs Cross Motion is **GRANTED** and Defendants' Cross Motion is **DENIED** as to the first, second, third, and fourth causes of action.
- As to the fifth cause of action, Plaintiffs Cross Motion is **DENIED** and Defendants' Cross Motion is **GRANTED** on the issue of whether the entry upon the curtilage or the shooting of Odin warrant Bane Act relief.  On the issue of whether Perez violated the Bane Act by pointing his weapon at Roger Bush, the Court **DENIES** Defendants' Cross Motion as to Roger Bush but **GRANTS** Defendants' motion as to the other plaintiffs.
- Defendants' Cross Motion is **DENIED** as to the issue of punitive damages.

**IT IS SO ORDERED**

Dated: October 17, 2016

Hon. M. James Lorenz
United States District Judge

CC: the Honorable Jan M. Adler